Hichardson, J.,
delivered the oinnion of the court:
The claimant’s intestate, John P. Hall, was a collector of internal revenue, and disbursing agent of the United States, for many years previous to his death in May, 1874.
At the time of his appointment as collector, the statute made it the duty of such of the collectors of internal revenue as the Secretary of the Treasury should direct to act as disbursing agents for certain purposes, and to give good and sufficent bonds with sureties for the faithful performance of their duties as such disbursing agents, in such sum and form as should be prescribed by the First Comptroller and approved by the Sec *44 retary. {Act March 3, 1865, cb. 78, § 4; 13 Stat. L., 483; Rev. Stat-., § 3144; Act March 1, 1879, cb. 125, § 2; Sup’lmt R. S., 424.)
Tbe bond thus required of bim was separate from, and additional to, bis bond as collector. (Act June 30, 1864, ch. 173, § 9; 13 Stat. L., 225; Rev. Stat., § 3143; Act March 1, 1875, oil. 125, § 2; Sup’lmt R. S., 423.)
The accounts of each collector in relation to bis separate duties as disbursing agent and as collector of tbe internal revenue were, and still are, kept separate in tbe books of tbe Treasury Department-
After the death of tbe claimant’s intestate, it was found that there was due and owing to him on his account as disbursing-agent tbe sum of $514.76, besides another small sum not now-in controversy. For this amount warrants were duly drawn on the Treasurer in bis favor, and drafts were issued thereon payable to bis order, although deceased, and were sent by the Treasurer, as required by tbe warrants, to the care of tbe First Comptroller, -who has ever since retained the same in the department.
These drafts remaining in the hands of the First Comptroller three years, unsatisfied and unpaid, the amounts thereof were duly covered into the Treasury and placed to the personal credit of said intestate July 17, 1879, in accordance with the provisions of Revised Statutes, sections 306, 307. The latter section provides that “all such moneys mentioned in this and the preceding section shall remain as a permanent ajrpropriation for the redemption and payment of all such outstanding-certificates, drafts, and checks.”
Such was the state of the account of Mr. Hall, the intestate, as disbursing agent, when this action was brought by the present claimant, who had been appointed administrator of his estate.
It is not denied, on the part of the defendants, that this sum stood properly to the credit of the deceased, and that it was justly due to his administrator unless it was rightly credited to him in another account and set off against another indebtedness, in relation to which the facts are as follows :
Some time after the decease of Hall, it was found that he was indebted to the defendants, as collector, on his revenue and stamp accounts, to the amount of $3,701.96, and that balance appeared against him on the Treasury statements.
*45 On the 16th of June, 1880, Congress passed an act entitled “An act for the relief of the estate and sureties of John P. Hall, deceased.” This act directed the proper accounting officers of the Treasury to credit the accounts of said Hall “ with the sum of $3,701.96, being the amount due the United States of America, as shown by the Treasury statements ”; and provided further “that the estate and sureties of said Hall, deceased, are hereby released from liability on the bonds of said Hall, as such collector, and from any judgment which may have been rendered on said bonds or either of them.”
The accounting officers in February, 1881, stated anew the account of said Hall, and,- charging him with the $3,701.96 due on his revenue and stamps accounts as collected, they credited him with the $514.76 standing to his personal credit on account of the drafts which had been issued for balances due him as disbursing agent and which had been covered into the Treasury. They then credited him with only $3,187.20 of the sum mentioned in the act for his relief. Thus they balanced his accounts and refused to allow the claimant to be paid said sum of $514.76.
The only question of law is, What was the-intention of Congress in directing the accounting officers to credit the late collector “with the sum of $3,701.96, being the amount due the United States of America, as shown by the Treasury state meuts”
Did they intend by that language to require the accounting officers to ascertain, by still further examination, how all matters of debit and credit stood between him and the defendants, growing out of any and all relations, official or otherwise, which he had ever had with the government, to restate the accounts and to credit him with oidy so much of the sum of $3,701.96 mentioned in the act as they should find due as a balance upon such restatement ? We think not. It is quite clear from the terms of the act that Congress had before them the account of the deceased, as collector proper, just as it then stood in the Treasury statements, and no other. He is designated as “late collector of internal revenue,” and no reference is made to his official capacity of disbursing agent. The amount directed to be credited corresponds exactly with the balance which appeared by that account to be due from him as collector. It was this sum for which his sureties on his collector’s bonds *46 were liable and. from, tbe payment of wliich they were released by the act. The whole tenor of the act shows that Congress did' not contemplate the re-examination and restatement of accounts. They were dealing with a particular account already stated, and it was the balance thus found that they intended to release. Had their intention been otherwise, we may well presume that they would have inserted after the specified amount the words “ or so much thereof as may be necessary”— words so frequently found in appropriation acts when the exact sum which may be required is left to be determined by future investigation or future circumstances.
For some reason, which does not appear, Congress saw fit to release the collector’s estate and his sureties from this whole balance “shown by the Treasury statements” to be due from-him in his capacity as collector, and it is not for this court to defeat their will by making his estate pay $514.76 toward it by applying thereto an indebtedness from the defendants to him growing out of other transactions, which were not considered by Congress, and were not in the minds of the legislators. Wilcox’s Case (12 C. Cls. R., 495; affirmed on appeal, 95 U. S., 661.)
That account of the deceased collector having been thus settled and balanced, there remains to his personal credit on another account the sum of $514.76, which the defendants can no more retain than an individual who holds bonds as collateral security for a note can retain them after the note is paid. The defendants’ officers are not warranted in enforcing payment, in whole or in part, by set-off or otherwise, of a canceled and discharged indebtedness.-
The case is materially different from that of McKnight et al. v. The United States, cited and relied upon by the defendants’ counsel. In that case the accounting officers, properly as we held, offset an existing debt to the claimants against an existing debt from them. (13 C. Cls. R., 292; affirmed on appeal, 98 U. S., 179.) In this case it is sought to set off an existing indebtedness to the claimant against a former debt from him which has been canceled and discharged by act of Congress.
The claimant will have judgment for $514.76.